IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SPI/MOBILE PULLEY WORKS, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 24-226-KD-MU |
| DREDGE YARD, INC., DMCC, and ROBERT JONK, | ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Consolidate (Doc. 3) and Defendants' Reply (Doc. 9),[1] as well as Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 6), Plaintiff's Response (Doc. 8), and Defendants' Reply (Doc. 11). These motions have been referred to the undersigned Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen LR 72(a)(2)(S). The undersigned, at the request of Defendants, held a hearing on the Motion to Dismiss on August 27, 2024. Upon consideration of all relevant filings in this case and the arguments presented at the hearing, the undersigned recommends that Defendants' Motion to Dismiss be **GRANTED** and Defendants' Motion to Consolidate be deemed **MOOT** for the reasons set forth below.

## I. Background

The instant case originated in state court when SPI/Mobile Pulley ("MP") filed a complaint against Dredge Yard and Robert Jonk in the Circuit Court of Mobile County,

---

[1] Plaintiff did not file a response to the motion to consolidate, which Defendants cite in this Reply as a basis for the Court to consider the motion to consolidate unopposed.

Alabama on April 3, 2024. (Doc. 1-2). Dredge Yard, Inc., DCMM ("DY"), and Robert Jonk timely removed the case to this Court on July 9, 2024. (Doc. 1).[2] Also on July 9, 2024, DY and Jonk filed the Motion to Consolidate this case with 24-cv-204-KD-MU, a pending case DY filed against MP with this Court a few weeks earlier on June 20, 2024. (Doc. 3). On July 11, 2024, MP filed a motion to dismiss in 24-cv-204, asserting that DY's suit should be dismissed and DY should have to bring its claims as counterclaims in this case because this case was the first filed. (*See* 24-cv-204, Doc. 6). On July 30, 2024, DY and Jonk filed the Motion to Dismiss in this case. (Doc. 6). In both the Motion to Consolidate and the Motion to Dismiss filed here by DY and Jonk, Defendants assert that MP's first-filed state-court case was an improper anticipatory filing, and, therefore, the first-filed rule should not apply to force Defendants to bring their claims as counterclaims in this suit. (See Docs. 3, 6, and 11). Instead, Defendants argue that MP's suit should be dismissed or consolidated into the pending case brought by DY, 24-cv-204. In response, MP argues that its filing of this case was not an improper anticipatory filing or brought in bad faith because, among other reasons, it's suit against both DY and Jonk raised additional and different claims than just those brought in DY's suit against MP. (Doc. 8, PageID.241). In one of their few points of agreement, the parties acknowledge that both of the pending suits deal with common issues of law or fact such that the two matters could be consolidated.

On February 27, 2024, counsel for DY sent a demand package to MP regarding an outstanding balance of $366,594 that MP owed for goods DY sold to MP. (Doc. 6,

---

[2] Removal was based on diversity jurisdiction under 28 U.S.C. § 1332 (*see* Doc. 1) and was not contested by MP.

PageID.136-7, Doc. 6-5, PageID.161). This demand package included a draft federal court complaint against MP asserting claims of: (1) breach of contract, (2) open account, (3) unjust enrichment/quasi-contract, and (4) promissory estoppel.[3] (Doc. 6-5, PageID.163-69). DY's counsel agreed to allow MP until close of business on March 7, 2024, to respond to its demand. (Doc. 6, PageID.137, Doc. 6-7, PageID.184).

On March 7, 2024, MP's counsel responded in a letter to DY with a counteroffer, asserting that it was due a number of significant credits for defective valves, late delivery of ball joints, and labor/materials incurred to correct the improperly machined ball joints received from DY. (Doc. 8, PageID.244-45). MP then stated that it also:

> believes it has illegal kickback-related claims to assert against Dredge Yard and Mr. Jonk, individually. As you may know, Mr. Jonk was the Senior Vice President of MP before joining Dredge Yard. During his employment with MP, Mr. Jonk sought and obtained commission pay, in his individual capacity, for orders placed for and/or equipment supplied by and/or through Dredge Yard.
> …
>
> Moreover, we have reason to believe that Mr. Jonk violated the "**Confidentiality Agreement**" between Dredge Yard and MP… MP is aware that Mr. Jonk has been contacting MP's customers during his employment at Dredge Yard and, by doing so, has breached the Confidentiality Agreement. Given these facts, MP is prepared to pursue the appropriate claims against Mr. Jonk, including but not limited to breach of contract, tortious interference, unjust enrichment, and breach of his fiduciary duties.

(Doc. 8, PageID.245).[4] MP concludes its letter by offering to pay a total of $100,000 to resolve the outstanding amounts owed to DY as well as its additional claims against DY and Jonk. (*Id.*)

---

[3] These are the same four counts that were in included in the complaint filed by DY on June 20, 2024. (*See* 24-cv-2024, Doc. 1).
[4] MP's complaint filed on April 3, 2024 asserted claims against DY and/or Jonk for (1) breach of fiduciary duties, (2) intentional interference with business relations, (3)

On March 25, 2024, DY's counsel, disagreeing with MP's claims for credits, emailed MP's counsel a counterdemand of $351,348 to resolve the outstanding amounts DY asserted it was owed by MP. (Doc. 6-9). As noted above, shortly after this email, MP filed suit against DY and Jonk in the Circuit Court of Mobile County on April 3, 2024. (Doc. 1-2, PageID.15-43). Notably, MP's counsel waited over 3 weeks to inform DY's counsel that they had filed suit, all while DY's counsel repeatedly reached out to MP's counsel regarding the status of its counterdemand. MP's counsel repeatedly responded with indications that the counterdemand was still under consideration and gave no indication that this suit had already been filed.

Specifically, DY's counsel emailed MP's counsel on April 15, 2024, asking if he and his client had a chance to review DY's March 25th counterdemand. (Doc. 6-10). Counsel for MP responded the same day and informed DY's counsel that he was "scheduling another call with his client on this." (*Id.*) On April 23, 2024, DY's counsel emailed MP's counsel again asking if he and his client had a chance to discuss DY's counterdemand. (Doc. 6-11, PageID.208). MP's counsel responded to DY's counsel the same day and stated: "No. My CEO left the Co so we are trying to figure out the new chain of command." (Doc. 6-11). DY's counsel sent MP's counsel another email on April 23, 2024, informing MP that if it did not accept DY's counterdemand by noon on April 26,

---

misappropriation of confidential information and trade secrets, (4) negligence – spoliation of evidence, (5) wantonness – spoliation of evidence, (6) breach of contract, (7) civil conspiracy, (8) injunction, (9) breach of warranty of fitness for a particular purpose, and (10) breach of implied warranty of merchantability. (Doc. 1-2, PageID.21-30). The Court recognizes that MP's suit includes additional claims and an additional party – Jonk – that are not part of the suit brought by DY against MP in 24-cv-204

2024, DY "will have no choice but to file suit in federal court at that time" but that they hoped "we can resolve this matter and avoid the expense of litigation." (Doc. 6-12).

On April 25, 2024, 22 days after MP filed this suit in state court and the day before the response deadline given by DY, MP's counsel finally informed DY's counsel that they had already filed suit and emailed DY's counsel a copy of the complaint, discovery requests, and the summons. (Doc. 6-14, PageID.216). MP's email also requested that counsel for DY accept service on behalf of DY and Jonk "[t]o expedite the process." (*Id.*). DY's counsel immediately responded to MP's counsel, stating: "we go way too far back for this kind of tactic. Our guy wanted to file suit yesterday, but I told him we were friends and I trusted you with every bone in my body to get back with us. No clients are worth losing the trust of our friends. You could have given me a call." (Doc. 6-14, PageID.215). MP's counsel responded by stating:

> We filed suit two weeks ago.
>
> Been trying to get folks served and under new management.
>
> Your client is and has been violating the agreement, soliciting customers.
>
> We have customers advising us of the details.
>
> And your client was heavy handed with regard to its defective parts and settlement position.
>
> I withheld filing suit while you were in trial and until your client's response…

(*Id.*). DY's counsel then responded with: "You completely lied to me about waiting on new management to direct you on the route to take. This was your email on Tuesday! I would have never done anything like this to you….". (Doc. 6-14, PageID.214). MP's counsel responded by stating only: "All very true." (*Id.*).

5

On June 5, 2024, MP's counsel again emailed DY's counsel to request that he accept service on behalf of DY and Jonk, both foreign defendants, because MP was hoping "to avoid the excess expense and time/delay from the international service vendors" and "so we can get on with the litigation." (Doc. 6-15, PageID.218-19). DY's counsel declined to accept service, explaining: "Based on the stunt you pulled in filing the complaint behind my back while leading me to believe we were in settlement negotiations, I have no idea if the defendants intend to retain us as counsel in defense of this state court action. As such, I cannot accept service for them." (Doc. 6-15, PageID.218-19). On June 25, 2024, MP's counsel emailed DY's counsel that they were able to serve Jonk and DY that day. (Doc. 6-17, PageID.236). DY's counsel responded that MP was served with DY's federal suit (24-cv-204) on June 20, 2024, and stated that DY intended to move to dismiss MP's state-court case. (Doc. 6-17, PageID.235). MP's counsel responded "I figured ours was first to file so we would be moving to dismiss yours…". (*Id.*). As noted above, DY then removed MP's state-court case to this Court on July 9, 2024, and filed the Motion to Consolidate, and, on July 30, 2024, DY filed its Motion to Dismiss. In the meantime, MP filed its own motion to dismiss in 24-cv-204.

## II. <u>Legal Analysis</u>

When dealing with substantially similar cases filed in different "federal district courts...the general principle is to avoid duplicative litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Generally, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption...that favors the forum of the first-filed suit under the first-filed

6

rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).[5] The first-filed rule provides, "[i]n absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982). In the Eleventh Circuit, the party objecting to jurisdiction in the first-filed forum bears the burden of proving "compelling circumstances" to warrant an exception to the first-filed rule. *Manuel*, 430 F.3d at 1135. "Typically, the first-filed rule applies to cases pending in different districts," but it "has been applied to intra-district cases or those before the same judge." *Savage v. Seterus, Inc.*, 2020 WL 2219194, *2 (M.D. Fla. May 7, 2020).

"The first-filed rule is a rule of equity...." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 80 (11th Cir. 2013). "And equitable considerations underlie any decision to find that an exception to the rule applies." *Guntersville Breathables, Inc. v. Twenty-Six Designs, LLC*, No. 4:21-CV-01543-ACA, 2022 WL 1179408, at *4 (N.D. Ala. Apr. 20, 2022) (referencing *Manuel*, 430 F.3d at 1135–36). Exceptions to the first-filed rule "are not rare, and are made when justice or expediency requires." *1818 Farms, LLC v. Plum Island Soap Co., LLC*, No. 5:18-CV-00135-AKK, 2018 WL 3708558, at *2 (N.D. Ala. Aug. 3, 2018). "[T]he first-filed rule is not an absolute, mandatory, inflexible requirement. Rather, courts have routinely cautioned against rote, mechanical application of the first-filed rule, and instead weigh the first-filed issue in the broader context of the

---

[5] The parties do not appear to dispute, and the Court also finds, that MP's state-court complaint that was filed on April 3, 2024, and then removed to this Court was the "first-filed" suit. *See Heritage Schooner Cruises, Inc. v. Acadia Ins. Co.*, 2009 WL 10699880, *1 (S.D. Fla. Nov. 30, 2009) ("[T]he date the removed action was filed in state court is the controlling date for the purposes of determining which of the two actions has priority under the first filed rule.").

ends of justice." *Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1244 (S.D. Ala. 2006). "Indeed, the '[m]echanical application of the [first-filed] rule could potentially conflict with the rationale underlying it.'" *1818 Farms,* at *2 (quoting *Barrington Grp., Ltd. v. Genesys Software Sys., Inc.*, 239 F. Supp. 2d 870, 873 (E.D. Wis. 2003)).

"The Eleventh Circuit has held that one compelling circumstance that the court may consider [in deciding to deviate from the first-filed rule] is whether the first-filed 'action was filed in apparent anticipation of the other pending proceeding.' " *Guntersville*, at *4 (quoting *Manuel*, 430 F.3d at 1135–36)*; see also 1818 Farms*, at *2. Stated another way, the first-filed rule has an "anticipatory suit exception" which "applies when one party, on notice of a potential lawsuit," files its own suit in anticipation of the other. *Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, 713 F.3d 71, 79 (11th Cir. 2013). "A suit is anticipatory within the meaning of the exception to the first-to-file rule when the plaintiff files suit upon receipt of specific, concrete indications that a suit by the defendant is imminent." 1 Cyc. of Federal Proc. § 2:175 (3d ed. 2023) (citing *Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*, 42 F. Supp. 3d 1377, 1383 (S.D. Cal. 2014)); see also *Aflac, Inc. v. SDT Air, LLC*, 978 F. Supp. 2d 1304, 1314 (M.D. Ga. 2013) ("[T]o be improperly anticipatory, the party generally needs to have been specifically threatened with legal proceedings.").

In addition, the Court takes notice that "[t]he law encourages voluntary settlement of disputes." *Janvey v. Romero*, 883 F.3d 406, 415 (4th Cir. 2018); *see also Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960)[6] (explaining that it is "the policy

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

of the law generally to encourage settlements"). Consequently, courts typically seek to encourage plaintiffs "to attempt settlement discussions...prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to instigate litigation in a district of its own choosing." *Capitol Records. Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1354 (S.D.N.Y. 1992) (quotation omitted); *see 1818 Farms*, at *6. "Fear of the other party filing an anticipatory action can easily prompt a party with a dispute to rush to the courthouse instead of raising, discussing, and resolving issues outside the court system. This imposes a burden not only on the specific parties to any given dispute, but also on the court system as a whole." *Guntersville*, at *5.

Here, DY asserts that the first-filed rule does not apply because MP filed an anticipatory lawsuit in bad faith. DY forcefully argues that the facts presented here parallel those presented in *1818 Farms*, in which the Northern District of Alabama[7] concluded that "1818 Farms' anticipatory filing and bad-faith manipulation of ongoing settlement negotiations" warranted a transfer of the case to the district of the second-filed action. *1818 Farms*, at *7. The undersigned agrees with DY that many of the considerations found in *1818 Farms* justifying a finding of an anticipatory suit exception to the first-filed rule are present here.

First, MP was on notice that DY intended to file suit if negotiations were unsuccessful. DY's original demand package sent to MP on February 27, 2024, included a draft federal court complaint against MP. (Doc. 6-5, PageID.163-69). The Court cannot think of a more direct signal that suit was imminent should negotiations fail. DY continued

---

[7] In its filings, DY repeatedly refers to the *1818 Farms* decision as an Eleventh Circuit case, while it is actually from the Northern District of Alabama.

to signal its intent to file suit if negotiations failed by following up with MP twice regarding its counterdemand, on both April 15th and April 23rd, and finally providing MP a response deadline of April 26th. In fact, DY did not just signal its intent to file suit, it explicitly stated on April 23rd that "it would have no choice but to file suit" if the counterdemand was not accepted by noon on April 26, 2024, while at the same time it continued to express an inclination to resolve the matter without litigation. (Doc. 6-12). The fact that MP only notified DY of its pending suit the day before the specified response deadline is a clear indication that MP's suit was an attempt to preempt the suit threatened by DY. Additionally, MP's counsel's statement to DY's counsel on June 25th that he "figured [MP] was the first to file so [MP] would be moving to dismiss [DY's federal complaint]…" further indicates that MP's suit was anticipatory. (Doc. 6-17, PageID.235). The Court finds that the facts presented here meet the requirements of the "anticipatory suit exception," which "applies when one party, on notice of a potential lawsuit," files its own suit in anticipation of the other. *See Collegiate Licensing Co.*, 713 F.3d at 79.

The Court acknowledges that the finding of an anticipatory suit does not automatically require it to abandon the first-filed rule and that the matter remains one of discretion for the Court. *Id*. However, there are additional equitable considerations present that tip the scales in favor of finding an exception to the first-filed rule. While the parties here were not actively involved in settlement negotiations to the extent present in *1818 Farms*, MP's counsel repeatedly indicated to DY's counsel that the counterdemand was still going to be presented to his client for consideration even after MP had filed suit. Despite having filed suit on April 3rd, on April 15th, MP's counsel responded to DY's inquiry regarding the status of its counterdemand by stating that he was "scheduling another call

with his client on this." (Doc. 6-10). On April 23rd, MP's counsel responded to DY's counsel regarding whether his client had reviewed the counterdemand by stating: "No. My CEO left the Co so we are trying to figure out the new chain of command." (Doc. 6-11). The fact that MP continued to allow DY to believe that its counterdemand was still under consideration, while later admitting that it was attempting to serve DY and Jonk with its suit during this time, weighs in favor of finding an improper anticipatory suit by MP such that the first-filed rule should not be followed. *See 1818 Farms*, at *5.

Further, when MP's counsel finally told DY's counsel of the suit, he attempted to justify the anticipatory filing by stating that DY and/or Jonk had been violating the confidentiality agreement and soliciting MP's customers and noted MP's displeasure with DY's settlement position. (Doc. 6-14, PageID.215). But at no point between March 25th, when DY made its counterdemand, and April 3rd, when MP filed suit, is there any evidence that MP informed DY that further negotiations were likely futile or that it planned to initiate litigation to pursue its own claims, even though MP's counsel knew DY intended to file suit should negotiations fail and knew that DY was open to continuing settlement discussions. Rewarding the filing of an anticipatory suit here goes against the policy of encouraging voluntary settlement of disputes and encourages a race to the courthouse to secure the first filing position. *See Fla. Trailer & Equip. Co.*, 284 F.2d at 571; *Janvey*, 883 F.3d at 415; *see also 1818 Farms*, at *6; *Guntersville*, at *5.

Finally, MP asserts that dismissing this case and requiring it to file its claims in 24-cv-204 would impose an unwarranted hardship on MP, as Jonk, a foreign defendant claiming to be from Dubai, UAE, is not a party in that case, and dismissal of this case "would nullify the perfection of service of process on Jonk." (Doc. 8, PaageID.239-40).

However, in response to this concern, DY's counsel stated at the hearing on the Motion to Dismiss that he would accept service on behalf of his client Jonk in this situation. As the undersigned is the magistrate judge assigned to both cases, DY may be held to its word on this point, and accordingly the Court does not find this concern to be factor weighing in favor of applying the first-filed rule.

### III. Conclusion

Based on the foregoing, it is **RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED**, that Plaintiff's claims be **DISMISSED without prejudice**, and that Defendants' Motion to Consolidate be found **MOOT.**

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the

objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **4th** day of **October, 2024**.

                                            s/P. BRADLEY MURRAY
                                            UNITED STATES MAGISTRATE JUDGE